223 F.3d 1135 (9th Cir. 2000)
 ROZLYN MCDADE, Plaintiff-Appellant,
v.
BRIDGETT WEST, as an individual and as an employee of the Ventura County District Attorney; MICHAEL WEST; MICHAEL BRADBURY, as the District Attorney of Ventura County; COUNTY OF VENTURA, Defendants-Appellees.
 No. 98-56500
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted December 6, 1999--Pasadena, California
Filed September 15, 2000
 [Copyrighted Material Omitted]
 Richard Hamlish, Esq., for the plaintiff-appellant.
 Joseph M. Lovretovich, Esq. for Bridgett and Michael West, and Jeffrey Held for Michael Bradbury and the County of Ventura, defendants-appellees.
 Appeal from the United States District Court for the Central District of California, D.C. No.CV 97-07632-WJR; William J. Rea, District Judge, Presiding
 Before: Dorothy W. Nelson, Robert R. Beezer, and Thomas G. Nelson, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 OVERVIEW
 
 1
 Rozlyn McDade appeals the district court's judgment in her 42 U.S.C. S 1983 action against her ex-husband, Michael West; her ex-husband's current wife, Bridgett West; Michael Bradbury, the Ventura County District Attorney; and the County of Ventura. This action stems from an incident wherein Ms. West, as an employee of the District Attorney's office, illegally used its Medical Eligibility Data System ("MEDS") computer system to find McDade at a battered women's shelter in order to serve McDade papers relating to child custody issues. In her complaint, McDade alleged that the defendants violated her right to privacy, conspired to violate her civil rights, failed to train and supervise under Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978), and violated California Penal Code S 273.3, which criminalizes malicious disclosure of the location of a domestic violence shelter. The district court granted summary judgment in favor of the County. On appeal, McDade asserts that: (1) Ms. West's actions were under color of state law; (2) she has shown that the County of Ventura was deliberately indifferent to her constitutional right to privacy; and (3) Michael Bradbury is not entitled to qualified immunity. We affirm the district court in part and reverse in part and remand.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 From May 1988 through July 1993, Appellant Rozlyn McDade was married to Michael West. West and McDade hadthree children during that marriage. Shortly after the marriage was dissolved, Michael West married Bridgett Pinckney (hereafter Ms. West) in June 1994; and the two stayed married until September 23, 1998. Ms. West was employed as a clerical employee at the Ventura County District Attorney Child Support Division. As part of her job, she had access to a statewide database known as MEDS, which contained the names and addresses of all persons eligible to receive certain public benefits. The MEDS system is made available to the District Attorney's Office for child support enforcement purposes, and to locate recipient spouses to testify against nonpayor spouses in criminal proceedings.
 
 
 3
 Apparently, Mr. West and Ms. McDade were having postmarital problems concerning the custody of their three children. Mr. West had previously filed and served McDade with at least six Orders to Show Cause ("OSC") regarding the custody conflict. Tensions between the parties came to a head on March 30, 1997, when Ms. West threw a rock through the windshield of McDade's car while she was inside the automobile. She was prosecuted by the Attorney General for the offense, and pleaded guilty to a vandalism charge. Her supervisor counseled her as a result of the criminal conviction, and she was fined and placed on probation. Just a few months later, however, in June of 1997, Ms. West attacked McDade in a bar in Santa Barbara. Although she was not prosecuted for the offense, her supervisors were informed of the altercation, and she was ordered to pay restitution and placed on probation.
 
 
 4
 During that same month, McDade also faced abuse from a third person who is unassociated with this lawsuit. As a result, on or about July 8, 1997, McDade moved to a secretly located women's shelter to escape this abusive individual. In order to continue receiving public assistance, McDade notified a social case worker, who entered her new address in the MEDS system. About the same time, Mr. West scheduled an OSC hearing to modify the child custody arrangement. However, because McDade was located in a confidential shelter, he was unable to serve her with notice of the hearing.
 
 
 5
 To find her location, Bridgett West inquired into the MEDS computer system while on duty on four occasions, July 7, July 16, July 28, and August 11, 1997. As a result of her queries, Ms. West obtained the address of the shelter where McDade was located, and disclosed the information to Mr. West. Mr. West then caused McDade to be served papers directly at the shelter on July 25, 1997. Almost immediately afterward, McDade was requested to leave the shelter because its location had been divulged to an ex-spouse, thereby potentially compromising everyone's safety. Although McDade was temporarily housed in a motel at the shelter's expense, her support eventually ceased and she was forced to seek alternative arrangements on her own.
 
 
 6
 It is undisputed that County officials did not have any idea that Bridgett West was planning to use her computer password to find McDade's confidential location. All employees of the Child Support Division are required to sign an oath of confidentiality for using the MEDS; her employee handbook and legal policy manual further underscored its confidentiality.
 
 
 7
 On August 11, 1997, McDade notified the Child Support Division Office that she suspected that Ms. West improperly accessed and released confidential information. The office responded by placing Ms. West on administrative leave until the allegations were investigated. The District Attorney's Office eventually determined that she had improperly utilized the MEDS to find confidential information regarding McDade's location. As a result, Ms. West was terminated from her employment with the District Attorney's Office, and the matter was referred for prosecution to the State Attorney's Office. On May 14, 1998, the Ventura County Superior Court found Ms. West guilty of violatingPenal Code Section 502(c)(1), which implicates the disclosure of private data.
 
 
 8
 On January 8, 1998, McDade filed an amended complaint that contained claims for an alleged conspiracy to violate civil rights, a Monell cause of action alleging deliberate indifference to her constitutional right to privacy, and another cause of action alleging a violation of California Penal Code Section273.7.[1] On March 2, 1998, after a hearing on the matter, the district court granted a motion to dismiss Michael Bradbury in his official and individual capacity. On June 24, 1998, after a hearing on cross motions for summary judgment, the district court granted the defendants' motion, finding: (1) that Bridgett West was acting "in the ambit of her personal pursuits" and not under color of law, and (2) that McDade failed to demonstrate that the County was deliberately indifferent to her civil rights. On July 23, 1998, the district court entered final judgment. McDade filed a timely notice of appeal on August 19, 1998.
 
 DISCUSSION
 
 9
 Grants of summary judgment are reviewed de novo. See Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir. 1989). The appellate court must view the evidence in the light most favorable to the plaintiff and determine whether there are any disputed issues of material fact and whether the district court correctly applied the substantive law. See Tzung v. State Farm Fire and Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir. 1989). We also review de novo a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998).
 
 
 10
 A. Under "color of law"
 
 
 11
 This is a case of first impression. Here, we face the novel question of whether a state employee who accesses confidential information through a government-owned computer database acts "under color of state law." To establish a prima facie case under 42 U.S.C. S 1983, McDade must demonstrate proof that (1) the action occurred "under color of law" and (2) the action resulted in a deprivation of a econstitutional right or a federal statutory right. Parratt v. Taylor , 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986). The district court found that Ms. West was acting in the ambit of her personal pursuits rather than under color of law when she accessed the database to find McDade's location. Therefore, it found the element of color of law to be missing from the undisputed facts of this case.
 
 
 12
 The purpose of S 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). "It is . . . a truism by now that there is no rigid formula for measuring state action for purposes of section 1983 liability. Rather, it is a process of `sifting facts and weighing circumstances' which must lead us to a correct determination." Ouzts v. Maryland Nat'l Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974) (citation omitted).
 
 
 13
 "The traditional definition of acting under color of state law requires that the defendant in a S 1983 action have exercised power `possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority ofstate law.' " West v. Atkins, 487 U.S. 42, 48 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941); see also Griffin v. Maryland, 378 U.S. 130, 135 (1964). "It is firmly established that a defendant in a S 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West, 487 U.S. at 49-50 (citations omitted).
 
 
 14
 The acts, therefore, must be performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 838 (9th Cir. 1996); see also Monroe v. Pape, 365 U.S. 167, 171 (1961), overruled on other grounds by Monell, 436 U.S. at 658 ("There can be no doubt . . . that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it."). For example, in Screws v. United States, 325 U.S. 91 (1945), the Supreme Court found that color of law was present when a sheriff, policeman, and special deputy beat a young man to death during the course of an arrest, even though the officers' actions were unauthorized and beyond the scope of their duties. Id. at 92-93. The Court explained that:
 
 
 15
 It is clear that under `color' of law means under`pre tense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words `under color of any law' were hardly apt words to express the idea.
 
 
 16
 Id. at 111; see also United States v. Price, 383 U.S. 787, 79596 (1966) (law enforcement officials and private persons acted under color of law when they released three civil rights activists from jail, knowing that they would be intercepted and murdered).
 
 
 17
 Here, it is undisputed that Ms. West was authorized by the County, and expected as part of her official duties, to access the MEDS database. The County itself described Ms. West's computer access privileges as "necessary to do her job." While acting under the pretense of performing her official duties, she accessed the database during normal working hours, using computer equipment and a password supplied by the County. See United States v. Causey, 185 F.3d 407, 443(5th Cir. 1999). Because Ms. West's status as a state employee enabled her to access the information, she invoked the powers of her office to accomplish the offensive act. Therefore, however improper Ms. West's actions were, they clearly related to the performance of her official duties. See Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 480 (9th Cir. 1991) ("For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned . . . .") (citation omitted).
 
 
 18
 In Dang Vang, a group of female Hmong refugees brought a S1983 action against an employee of the State of Washington who raped them on numerous occasions when they contacted him for employment assistance. The defendant challenged the jury verdict on the grounds that there was no evidence to support the jury's view that Xiong acted under color of law, arguing (as the Appellees do in this case) that his actions were totally outside the scope of his employment and therefore outside of the color of state law. The Ninth Circuit disagreed, noting that the plaintiffs presented sufficientevidence to state a S1983 claim because the evidence was sufficient for a jury to conclude that the defendant abused his state authority. Because there was evidence of abuse, the Ninth Circuit concluded that there was substantial evidence to find that he acted under color of state law in raping the plaintiffs.
 
 
 19
 Similarly, we conclude that Ms. West acted under color of state law since there is undisputed evidence that Ms. West abused her responsibilities and purported or pretended to be a state officer during the hours in which she accessed the computer. For these reasons, Van Ort, 92 F.3d at 838 and Huffman v. County of Los Angeles, 147 F.3d 1054, 1058 (9th Cir. 1998) are both distinguishable. In Van Ort , a deputy, Michael Stanewich, performed a search of a residence within the course of his duties that required him to open a safe that contained cash, jewelry and coins. Later, he returned to the residence while off-duty and forcibly entered the home. 92 F.3d at 833. Although there are conflicting accounts as to the point at which the deputy donned a disguise, at no point did he affirmatively identify himself as a police officer. Id. After attacking and torturing the Van Orts, the police arrived and shot Stanewich when he failed to comply with their commands. Id. It was only after the deputy was shot that the police recognized him as one of their own. Id .
 
 
 20
 In that case, we expressly noted that "Stanewich also might have been acting under color of law if he had purported to or pretended to act under color of law, even if his goals were private and outside the scope of authority." 92 F.3d at 838 (citing United States v. Screws, 325 U.S. at 111 (emphasis added)). However, because the robbery and assault were in no way related to Stanefield's official duties, he was found to be acting in his private capacity. See also Huffman , 147 F.3d at 1057-58 (reaching same conclusion with respect to off-duty sheriff who failed to identify himself as an officer during bar-room brawl). Here, the circumstances are radically different because Ms. West acted under the pretense of state employment by asserting her state-authorized passcode to enter into the database. Therefore, since she committed an act that was related to her official duties, we conclude that Ms. West acted under color of state law. See Dang Vang, 944 F.2d at 480 ("[A]ctions taken under color of state law must be related to the state authority conferred on the actor, even though the actions are not actually permitted by the authority.").[2]
 
 B. Monell claim
 
 21
 McDade's third cause of action alleged, in relevant part, that the District Attorney of Ventura County failed to train Ms. West that the unauthorized disclosure of a battered women's shelter violated her constitutional right to privacy and California Penal Code S 273.7. See Monell, 436 U.S. at 694. Even assuming for the moment that the precise disclosure violated McDade's constitutional right to privacy, see Crawford v. United States Trustee, 194 F.3d 954, 958 (9th Cir. 1999) (suggesting a constitutional right to privacy in personal information), she has failed to demonstrate a "direct causal link" to any municipal policy or custom as required by City of Canton v. Harris, 489 U.S. 378, 385 (1989). A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee. See Davis v. City of Ellensburg, 869 F.2d 1230, 1233-34 (9th Cir. 1989). "Only if a plaintiff shows that his injury resulted from a `permanent and well settled' practice may liability attach for injury resulting from a local government custom. " Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989).
 
 
 22
 McDade has also failed to show that the County of Ventura could have foreseen the disclosure after being informed of Ms. West's violent tendencies toward McDade. See Van Ort, 92 F.3d at 837. Indeed, there was no evidence that the County should have drawn a logical connection between the two. Therefore, the district court correctly found that McDade failed to demonstrate that the County made any deliberate or conscious choice which led to a policy, custom, or practice which actually caused the deprivation of the plaintiff's federally protected civil rights at all or in a manner which was deliberately indifferent. See also Board of County Comm'rs, 520 U.S. 397, 404-05 (1997). Since it is clear that no state policy served as the "moving force" behind the violation, there was no proximate causality between the municipality's acts and the disclosure. Van Ort, 92 F.3d at 835. "Municipalities cannot be held liable simply because they employ a tortfeasor." Davis v. City of Ellensburg, 869 F.2d at 1234.
 
 
 23
 C. Bradbury in his official and individual capacity The district court also granted the motion to dismiss District Attorney Michael Bradbury in his official and individual capacity without leave to amend because Bradbury was entitled to qualified immunity "because no clearly established law proscribed his actions, and he could have reasonably believed his conduct was lawful." The district court was correct in its finding.
 
 
 24
 In Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), the Supreme Court observed that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The test for qualified immunity is: (1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was lawful. See Kelley v. Borg, 60 F.3d 664, 666 (9th Cir. 1995).
 
 
 25
 It is unclear what policy or decision McDade objects to on Mr. Bradbury's part. See Barren v. Harrington , 152 F.3d 1193, 1194 (9th Cir. 1998)(stating that "[l]iability under S 1983 must be based on the personal involvement of the defendant"). Indeed, the only action which can be attributed to Bradbury involves the provision of access to MEDS to Ms. West. Here, the district court correctly observed that no clearly established law prohibited the District Attorney's provision of access to MEDS to Ms. West. Moreover, McDade has failed to demonstrate that Bradbury should have known that Ms. West's access should have been restricted by virtue of her personal interest. "A reasonable belief that the conduct was lawful is sufficient to secure qualified immunity." Kulas v. CSO Valdez, 159 F.3d 453, 456 (9th Cir. 1998). Given that there was no evidence to suggest that provision of the access code to Ms. West was unlawful, qualified immunity was justified in this instance.
 
 CONCLUSION
 
 26
 In sum, having considered the nature of Ms. West's conduct, the circumstances surrounding her conduct, whether it related to the performance of her official duties, and any outward indicia of state authority, we conclude that she acted under color of law, and that summary judgment was improperly granted. Therefore, for the reasons set forth above, we affirm and reverse in part and remand for further proceedings consistent with this opinion. Each party shall bear its own costs.
 
 
 27
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 California Penal Code Section 273.7, titled, in pertinent part, "Malicious Disclosure of Location of Domestic Violence Shelter," provides, in pertinent part, that:
 Any person who maliciously publishes, disseminates, or other wise discloses the location of any domestic violence shelter or any place designated as a domestic violence shelter, without the authorization of that domestic violence shelter, is guilty of a mis demeanor.
 
 
 [2]
 Since the issue is not before this court, we need not reach the question of whether Ms. West's disclosure resulted in a deprivation of a constitutional right or a federal statutory right for S 1983 purposes.