**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| NADIA NAFFE, an individual, *Plaintiff-Appellant*, | No. 13-55666 |
| | D.C. No. 2:12-cv-08443-GW-MRW |
| v. | |
| JOHN PATRICK FREY, an individual; COUNTY OF LOS ANGELES, a municipal entity, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
May 6, 2015—Pasadena, California

Filed June 15, 2015

Before: A. Wallace Tashima, Richard C. Tallman,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Civil Rights

The panel affirmed in part and reversed in part the district court's dismissal of an action brought by conservative political activist Nadia Naffe against Los Angeles County Deputy District Attorney Patrick Frey, who published derogatory and intimidating statements about Naffe on his personal Internet blog and on Twitter.

Affirming the dismissal of Naffe's claims brought under 42 U.S.C. § 1983, the panel held that Naffe's factual allegations did not sufficiently support her claim that Frey acted under color of state law. The panel determined that: (1) the allegations did not give rise to a reasonable inference that Frey harmed Naffe while on duty; (2) Frey's comments about Naffe were not sufficiently related to his work as a county prosecutor; and (3) the facts did not support Naffe's claim that Frey "purported or pretended to act under color of [state] law" when he blogged about her. Finally, the mere fact that Naffe knew Frey was a prosecutor did not mean he abused his government position to violate her rights.

Reversing the district court's dismissal of Naffe's state law claims, the panel held that the district court erred when it required Naffe to establish by a preponderance of the evidence the amount in controversy for showing federal diversity jurisdiction. The panel held that it could not say to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

a legal certainty that Naffe's claims were worth less than $75,000.01.

## COUNSEL

Eugene G. Iredale (argued) and Grace Jun, Iredale and Yoo, APC, San Diego, California, for Plaintiff-Appellant.

Ronald D. Coleman (argued), Archer & Greiner PC, Hackensack, New Jersey; Kenneth P. White, Brown, White & Newhouse LLP, Los Angeles, California, for Defendant-Appellee John Patrick Frey.

Paul B. Beach (argued) and John W. Nam, Lawrence Beach Allen & Choi, PC, Glendale, California, for Defendant-Appellee County of Los Angeles.

Eugene Volokh, UCLA School of Law, Los Angeles, California, for Amicus Curiae Digital Media Law Project.

## OPINION

TALLMAN, Circuit Judge:

Plaintiff Nadia Naffe appeals the district court's dismissal of her 42 U.S.C. § 1983 claim and six related state law causes of action. Her appeal requires us to resolve two issues. First, we must decide whether the factual allegations in Naffe's complaint are sufficient to support her claim that Defendant John Patrick Frey—a Los Angeles County Deputy District Attorney—acted under color of state law for the purposes of § 1983 when he published derogatory statements about Naffe

on his personal Internet blog and on Twitter. Second, we must determine if the district court erred when it required Naffe to establish by a preponderance of the evidence the amount in controversy for showing federal diversity jurisdiction.

First, we hold that Naffe has not supported adequately her claim that Frey acted under color of state law for the purposes of § 1983. Rather, the factual allegations—taken as true—compel the conclusion that Frey did not act under color of state law when he blogged and Tweeted about Naffe because he did so for purely personal reasons, and the communications were unrelated to his work as a county prosecutor. Second, we conclude that the district court applied an incorrect standard to evaluate the amount in controversy and, as a result, improperly dismissed Naffe's state law claims. We therefore affirm in part, reverse in part, and remand.

# I

"Because this is an appeal from the dismissal of an action pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept as true the facts alleged in the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 677 (9th Cir. 2001) (citation omitted) (internal quotation marks and brackets omitted). Naffe alleges the following facts.

Naffe and Frey are conservative political activists. By day, Frey is a criminal prosecutor in Los Angeles County assigned to the gang unit. By night, he maintains a blog, Patterico's Pontifications (patterico.com), and a Twitter handle, @Patterico. On both, he writes and comments about—among other things—conservative politics, liberal

media bias, and criminal law. Although he frequently references his position as a Deputy District Attorney in his posts and Tweets, his blog contains the following message: "The statements made on this web site reflect the personal opinions of the author. They are not made in any official capacity, and do not represent the opinions of the author's employer." Frey's Twitter page displays a similar disclaimer.

Like Frey, Naffe is a well-known political activist. She is also a former friend and colleague of James O'Keefe, a conservative politico who claims to "specializ[e] in producing undercover videos that style themselves as 'exposés' of liberal political misdeeds." Naffe admits to assisting O'Keefe with at least one of his "sting operations," a 2010 plot to wiretap Representative Maxine Waters's congressional district office, which is located in Los Angeles. Around that time, O'Keefe checked his email on Naffe's smart phone. He did not log out of the email application, and as a result, Naffe maintained access to O'Keefe's account and the emails therein. Naffe and O'Keefe had a falling out in mid-2011 when Naffe accused O'Keefe of sexually assaulting her in a New Jersey barn.

Thereafter, Frey (who was also a friend of O'Keefe) wrote eight unfavorable articles about Naffe that he posted to his blog. He also Tweeted several dozen threatening and harassing statements about Naffe. In these blog posts and Tweets, Frey accused Naffe of lying about the barn incident and filing frivolous lawsuits against O'Keefe. He also called Naffe a liar, illiterate, callous, self-absorbed, despicable, a smear artist, dishonest, and absurd. Finally, in one Tweet he insinuated that Naffe broke the law when she accessed O'Keefe's emails: "@NadiaNaffe My First task is learning what criminal statutes, if any, you have admitted violating."

Frey also posted to his blog over 200 pages of a deposition transcript from an unrelated lawsuit between Naffe and her former employer. The transcript contained substantial private information, including Naffe's social security number and her mother's maiden name. After Frey posted this information, Naffe received emails from Experian—a credit reporting agency—notifying her that unauthorized individuals made changes to her credit report and were fraudulently using her social security number.

In late 2012, Naffe filed this action against Frey, the County of Los Angeles, and several others (collectively, "defendants") in federal district court. She invoked both the district court's federal question and diversity jurisdiction. Naffe's first amended complaint states seven total claims for relief—one federal claim and six state law claims. The federal claim arises under 42 U.S.C. § 1983. According to Naffe, "[i]n abusing his position as a Deputy District Attorney . . . , FREY acted under color of state law in his continuous harassment of PLAINTIFF via his website, blog and Twitter account. FREY'S harassment of PLAINTIFF violated her First Amendment constitutional right to petition the government for redress of grievances." Naffe also raises the following California state law claims: public disclosure invasion of privacy, false light invasion of privacy, defamation, intentional infliction of emotional distress, negligence, and negligent supervision (against the County of Los Angeles).

Naffe alleges that she suffered more than $75,000 worth of damages as a result of Frey's conduct. Specifically, she suffered general and special damages including, "harm to PLAINTIFF'S reputation, emotional distress, expense related to medical treatment concerning health issues, including but

not limited to bleeding ulcers suffered as a result of the stress and trauma caused by defendants, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss, all of which are in excess of $75,000."

In early 2013, defendants filed several motions to dismiss Naffe's state and federal claims.[1] After a hearing, the district court granted defendants' dispositive motions, effectively terminating Naffe's case in federal court. The court determined that Frey did not act "under color of state law" when he blogged and Tweeted about Naffe, and so it dismissed without leave to amend Naffe's 42 U.S.C. § 1983 claim. *Naffe v. Frey*, Case 2:12-cv-08443-GW-MRW, slip op. at 2 (C.D. Cal. Apr. 19, 2013) (order confirming tentative ruling).

The district court dismissed Naffe's six state law claims for lack of subject matter jurisdiction. *Id.*; *see also* Fed. R. Civ. P. 12(b)(1). In a preliminary ruling on defendants' motions to dismiss, the district court expressed doubt as to whether Naffe had sufficiently established the amount in controversy required for federal diversity jurisdiction. *See Naffe v. Frey*, Case 2:12-cv-08443-GW-MRW, slip op. at 5–10 (C.D. Cal. Apr. 18, 2013) (tentative ruling). In response to these doubts, Naffe elaborated on her alleged injuries in a sworn declaration. *See* Plaintiff Nadia Naffe's Declaration in Support of Her Opposition to Defendant John Patrick Frey's Motion to Dismiss Pursuant to Rule 12(b)(1), Case

---

[1] In her opposition to Frey's Rule 12(b)(6) motion, Naffe moved to voluntarily dismiss her § 1983 claim against the County of Los Angeles. Because the County cannot be vicariously liable for Frey's actions under § 1983, *see Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978), Naffe's § 1983 claim is against Frey alone.

2:12-cv-08443-GW-MRW (C.D. Cal. Feb. 21, 2013) (Dkt. # 56-2) (hereinafter "Naffe Decl."). Notwithstanding this additional offer of proof, the district court found Naffe did not sufficiently support her allegation that the amount in controversy exceeds $75,000. *Naffe v. Frey*, Case 2:12-cv-08443-GW-MRW, slip op. at 2 (C.D. Cal. Apr. 19, 2013) (order confirming tentative ruling). As a result, the court determined it did not have jurisdiction over Naffe's state law claims under 28 U.S.C. § 1332(a)(1), and it declined to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c)(3).

Plaintiff filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II

We review de novo a district court's dismissal for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and a district court's dismissal for failure to state a claim, Fed. R. Civ. P. 12(b)(6). *See N. Cnty. Cmty. Alliance, Inc. v. Salazar*, 573 F.3d 738, 741 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted).

## III

Naffe first argues the district court erred when it concluded that Frey did not act under color of state law for purposes of § 1983 liability. According to Naffe, Frey threatened to prosecute her for accessing O'Keefe's emails and for her role in the plot to wiretap Representative Waters's

Los Angeles office. His goal was to intimidate her into keeping silent about O'Keefe's illegal activities, including the barn incident and his various "sting operations." In this way, argues Naffe, Frey used his state authority to violate Naffe's constitutional rights to speak and petition the government for a redress of grievances. *See* U.S. Const. amend. I. We disagree. For the following reasons, we hold that Naffe's allegations do not "allow [us] to draw the reasonable inference" that Frey acted under color of state law when he allegedly denigrated Naffe on the Internet. *See Iqbal*, 556 U.S. at 678. We therefore affirm the district court's dismissal of Naffe's § 1983 claim.

## A

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). It provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the

Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Dismissal of a § 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element. *See, e.g.*, *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000); *Price v. Hawaii*, 939 F.2d 702, 707–09 (9th Cir. 1991); *see also Iqbal*, 556 U.S. at 678. We focus our analysis on the state action requirement.

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941); *see also Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991) ("'[I]t is firmly established that a defendant in a § 1983 suit acts under color of state law *when he abuses the position given to him by the state*.'" (quoting *West*, 487 U.S. at 49–50)). This test is generally satisfied when a state employee, like a deputy district attorney, wrongs someone "while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50. But § "1983 does not federalize all torts or other deprivations of rights committed by a person who is a law enforcement officer or other government agent." *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (citation omitted) (internal quotation marks omitted); *see also Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996). Particularly when the state employee is off duty, whether he or she "is acting under color of state law turns on the nature and circumstances of the [employee's] . . . conduct and the relationship of that conduct to the performance of his official duties." *Anderson*,

451 F.3d at 1068 (citation omitted) (internal quotation marks omitted).

Although we have never decided if and when a state employee who moonlights as a blogger acts under color of state law, we have considered more generally when the actions of off-duty state employees give rise to § 1983 liability. In *Stanewich*, for example, we held that defendant Stanewich—a San Diego sheriff's deputy—did not act under color of state law when he attempted to rob plaintiffs, the Van Orts. *See* 92 F.3d at 838. Although he originally identified his victims during a police search of their home, at the time of the attempted robbery "Stanewich was attired not in uniform but in blue jeans and wore a mask, sunglasses and cap in an attempt to conceal his identity. . . . He did not display a badge to plaintiffs and denied being a police officer." *Id.* at 833–34, 838 (citation omitted). We concluded that Stanewich did not act under color of state law during the attempted robbery because "[a]t no point did Stanewich purport to be acting as a policeman," and even if the victims recognized him as an officer, that recognition "does not alone transform private acts into acts under color of state law." *Id.* at 839.

We came to the opposite conclusion in *McDade v. West*, 223 F.3d 1135 (9th Cir. 2000), and *Anderson*, 451 F.3d at 1065, based on distinguishing facts. In *McDade*, defendant "West, as an employee of the [Ventura County] District Attorney's office, illegally used its Medical Eligibility Data computer system"—to which she had access only because of her official position—to find her husband's ex-wife, who was living in a battered women's shelter. 223 F.3d at 1137. We held that West acted under color of state law because she "abused her responsibilities and purported or pretended to be

a state officer during the hours in which she accessed the computer." *Id.* at 1141. In *Anderson*, Defendant Warner—a jail commander in Mendocino County—assaulted Anderson after Anderson rear-ended him. 451 F.3d at 1065. Warner was off duty, driving in his car with his wife and a friend. Nevertheless, Warner prevented bystanders from intervening in his attack by claiming that he was "a cop," a claim that his passengers echoed. *See id.* at 1065–66. We held that Warner acted under color of state law because he invoked (and therefore abused) his law enforcement status while assaulting Anderson, and there was a close nexus between his work at the jail and his claim that the assault was "police business." *Id.* at 1066.

*Stanewich*, *McDade*, and *Anderson* establish our framework for determining whether Naffe pleaded facts sufficient to support her allegation that Frey acted under color of state law. Under those cases, a state employee who is on duty, or otherwise exercises his official responsibilities in an off-duty encounter, typically acts under color of state law. *See West*, 487 U.S. at 49–50; *McDade*, 223 F.3d at 1139–41. That is true even if the employee's offensive actions were illegal or unauthorized. *See Monroe v. Pape*, 365 U.S. 167, 172 (1961), *overruled on other grounds by Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). A state employee who is off duty nevertheless acts under color of state law when (1) the employee "purport[s] to or pretend[s] to act under color of law," *Stanewich*, 92 F.3d at 838; *McDade*, 223 F.3d at 1141, (2) his "pretense of acting in the performance of his duties . . . had the purpose and effect of influencing the behavior of others," *Anderson*, 451 F.3d at 1069, and (3) the harm inflicted on plaintiff "'related in some meaningful way either to the officer's governmental status or to the performance of his duties,'" *id.* (quoting *Martinez v.*

*Colon*, 54 F.3d 980, 987 (1st Cir. 1995)). On the other hand, a government employee does not act under color of state law when he pursues private goals via private actions. *See id.*; *see also Townsend v. Moya*, 291 F.3d 859, 861–62 (5th Cir. 2002).

**B**

Naffe's § 1983 claim fails under this framework for several reasons. First, Naffe's factual allegations do not give rise to the reasonable inference that Frey harmed Naffe while on duty or when "exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50. Frey is a county prosecutor whose official responsibilities do not include publicly commenting about conservative politics and current events. *Cf. McDade*, 223 F.3d at 1140 (finding state action when "West was authorized by the County, and expected as part of her official duties, to access the MEDS database"). While county prosecutors are sometimes authorized to speak on behalf of their employers, Naffe pleads no facts to support her allegation that the County authorized or encouraged Frey's social and political commentary. Indeed, Frey discussed Naffe not on the Los Angeles County District Attorney's verified[2] Twitter page, *see LA District Attorney*, Twitter.com, https://twitter.com/LADAOffice (last visited May 26, 2015), but rather on his personal Twitter page and blog, which contain disclaimers that "[a]ll statements are made in [Frey's]

---

[2] Twitter "verifies" certain accounts to "establish authenticity of identities of key individuals and brands on Twitter." *FAQs about verified accounts*, Twitter.com, https://support.twitter.com/articles/119135-faqs-about-verified-accounts (last visited May 26, 2015). In other words, verification is Twitter's method of ensuring at least some of its users are who they say they are. Twitter identifies verified users by displaying a blue check symbol next to the user's Twitter handle.

private capacity and not on behalf of [his] employer." Finally, each Tweet or post cited by Naffe in her complaint is time-stamped very late at night or early in the morning, a fact which undermines her claim that Frey blogged and Tweeted during normal business hours using County resources. *Cf. McDade*, 223 F.3d at 1140 (finding persuasive the fact that West "accessed the database during normal working hours").

Second, Frey's comments about Naffe are not sufficiently related to his work as a county prosecutor to constitute state action. Naffe alleges Frey threatened to prosecute her as a way of coercing her to delete O'Keefe's emails from her smart phone and remain quiet about O'Keefe's plan to wiretap Representative Waters's district office. But Naffe does not state any facts to support the allegation that Frey investigated her (or even could have investigated her). *Iqbal*, 556 U.S. at 678. She does not, for example, allege Frey used his authority to contact law enforcement, open an investigation file, or interview witnesses about Naffe's involvement with O'Keefe. And a single Tweet in which Frey rhetorically asked "what criminal statutes, if any, [Naffe] admitted violating," does not create a nexus between Frey's private harangues and his job. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be treated as that of the State itself." (citation omitted) (internal quotation marks omitted)).

Third, the facts Naffe pleads do not support her claim that Frey "purported or pretended to act under color of [state] law" when he blogged about her. *See Stanewich*, 92 F.3d at 838. To the contrary, Frey frequently reminded his readers

and followers that, although he worked for Los Angeles County, he blogged and Tweeted only in his personal capacity. By contrast, in *Anderson*, where we found state action, defendant Warner specifically associated his actions with his law enforcement position, claiming to bystanders he was "a cop," and the assault was "police business." 451 F.3d at 1066–67. Here, unlike in *Anderson*, Frey did not claim to act in his official capacity. For this reason, Frey did not abuse the power given to him by the state to influence or harm Naffe.

And although Frey drew on his experiences as a Deputy District Attorney to inform his blog posts and Tweets, that alone does not transform his private speech into public action. *See Stanewich*, 92 F.3d at 833–34, 839–40 (declining to find state action even though Stanewich drew on knowledge he gained as a police officer to identify his victims). Indeed, if we were to consider every comment by a state employee to be state action, the constitutional rights of public officers to speak their minds as private citizens would be substantially chilled to the detriment of the "marketplace of ideas." *See City of San Diego, Cal. v. Roe*, 543 U.S. 77, 82 (2004) (per curiam) ("[P]ublic employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public. Were they not able to speak on these matters, the community would be deprived of informed opinions on important public issues."); *cf. Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("[W]hen public employees [including deputy district attorneys] make statements pursuant to their *official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." (emphasis added)).

Finally, the mere fact that Naffe knew Frey was a prosecutor does not mean he abused his government position to violate her rights. *See Stanewich*, 92 F.3d at 839 ("Merely because Donald recognized Stanewich, however, would not make the attack under color of law."). Indeed, the focus of the inquiry is not on what Naffe knew about Frey but rather on how Frey used his position as a state employee to harm Naffe, and Naffe has pleaded insufficient facts to support her numerous allegations that Frey used his position as a Deputy District Attorney to harm her. *See Iqbal*, 556 U.S. at 678 (requiring a complaint to contain alleged factual matter sufficient to support a plausible claim to relief).

In sum, Naffe seeks to support her allegation of state action by claiming repeatedly that Frey acted "[i]n his capacity as a Deputy District Attorney" when he criticized her online. But she does not allege facts that support this claim. And, as the district court correctly held, a bare claim of state action does not withstand a Rule 12(b)(6) motion. *See id.* at 678; *Price*, 939 F.2d at 708 ("[A] defendant is entitled to more than the bald legal conclusion that there was action under color of state law.").[3]

## IV

Naffe next argues the district court erred when it dismissed her six state law claims for lack of subject matter jurisdiction. Even absent a § 1983 claim, Naffe asserts federal courts have jurisdiction over her state law claims pursuant to 28 U.S.C. § 1332(a)(1) because the parties are

---

[3] Because we affirm on the "state action" prong, we do not consider whether Naffe sufficiently alleged "the violation of a right secured by the Constitution and laws of the United States." *West*, 487 U.S. at 48.

from different states and the amount in controversy exceeds $75,000. After briefing and a hearing, the district court concluded that Naffe did not establish by a preponderance of the evidence that she satisfied § 1332's amount in controversy requirement. *Naffe v. Frey*, Case 2:12-cv-08443-GW-MRW, slip op. at 2 (C.D. Cal. Apr. 19, 2013) (order confirming tentative ruling). As a result, the court dismissed her case for lack of subject matter jurisdiction. We conclude that the district court applied an incorrect legal standard to evaluate the amount in controversy, and so we reverse and remand.

## A

To establish federal jurisdiction under § 1332(a)(1), the proponent must allege (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). Only the second requirement is at issue here.[4]

When a plaintiff files suit in federal court, we use the "legal certainty" test to determine whether the complaint meets § 1332(a)'s amount in controversy requirement. *See Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363–64 (9th Cir. 1986) (adopting the "legal certainty" test); 14AA The Late Charles Alan Wright, et al., *Federal*

---

[4] It is uncontested that Naffe is domiciled in Massachusetts, Frey is domiciled in California, and the County of Los Angeles is a citizen of California for purposes of diversity jurisdiction, *see Moor v. Alameda Cnty.*, 411 U.S. 693, 717–18, 721–22 (1973). The parties are thus "completely diverse." *See Strawbridge v. Curtiss*, 7 U.S. 267, 267–68 (1806).

*Practice & Procedure, Jurisdiction* § 3702 (4th ed. 2015) (noting that this test "has become the universal test in the context of actions that originate in the federal courts"). Under this test, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938); *see also Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010). As we have recognized:

> the legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.*Pachinger*, 802 F.2d at 364 (quoting 14A Wright, Miller, & Cooper, *Federal Practice & Procedure, Jurisdiction* § 3702, at 48–50 (2d ed. 1985)).

Citing *McNutt*, 298 U.S. at 189, the district court required Naffe to establish the amount in controversy by a preponderance of the evidence, and it dismissed her case when she failed to meet this burden. *Naffe v. Frey*, Case 2:12-cv-08443-GW-MRW, slip op. at 6 & n.11 (C.D. Cal. Apr. 18, 2013). That was error. It is true that some cases

warrant a more thorough inquiry into the facts underpinning jurisdiction than the legal certainty test permits. For example, where a party seeks to remove a case from state to federal court under 28 U.S.C. § 1441, the proponent of removal bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Geographic Expeditions*, 599 F.3d at 1106–07; *Gaus v. Miles*, 980 F.2d 564, 566–67 (9th Cir. 1992) (applying *McNutt*'s preponderance test to evaluate the jurisdictional amount in a removal case); *cf. Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012) (noting that a district court may require a party to establish certain jurisdictional facts, like the location of a business's "nerve center," by a preponderance of the evidence); *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 540–41 (7th Cir. 2006) (applying the legal certainty test to answer the ultimate legal question whether the amount in controversy requirement is satisfied, but asking the proponent of jurisdiction to establish by a preponderance of the evidence certain facts underlying the claimed amount). But that more searching inquiry is inapplicable where, as here, the plaintiff files suit originally in federal court, the case raises traditional state tort claims, and the complaint affirmatively alleges that the amount in controversy exceeds the jurisdictional threshold. In such a case, the legal certainty test applies, and the district court must accept the amount in controversy claimed by the plaintiff unless it can declare to a legal certainty that the case is worth less. *See St. Paul Mercury*, 303 U.S. at 288–89.

## B

Here, it does not appear to a legal certainty that Naffe's claim is really for less than the jurisdictional amount. Naffe alleges she incurred more than $75,000 in damages as a result of Frey's conduct. That sum includes the money Naffe

allegedly spent repairing her credit history after Frey posted her social security number and other private information online. It also includes damages resulting from the medical problems, emotional distress, lost job opportunities, and harm to her reputation she allegedly suffered because of the disparaging comments Frey published about her. Naffe reaffirmed these allegations in a sworn declaration. If Naffe proves these facts at trial, a jury could reasonably award her damages exceeding $75,000. *See, e.g.*, *Hope v. Cal. Youth Auth.*, 134 Cal. App. 4th 577, 595 (2005) (affirming a $1 million verdict for emotional distress damages). *See generally* 6A Robert F. Koets, et al., *Cal. Jurisprudence 3d Assault & Other Willful Torts* § 144 (2015) (discussing the availability of damages for privacy torts). In other words, no "rule of law or limitation of damages would make it virtually impossible for [Naffe] . . . to meet the amount-in-controversy requirement." *Pachinger*, 802 F.2d at 364. And the record is devoid of "independent facts [to] show that the amount of damages was claimed merely to obtain federal court jurisdiction." *See id.* Thus, Naffe's state law tort claims satisfy the amount in controversy requirement, and the district court erred when it dismissed the case for lack of subject matter jurisdiction.

## V

The district court properly dismissed Naffe's § 1983 claim because her unsupported legal conclusions do not "allow [us] to draw the reasonable inference" that Frey acted under color of state law when he blogged and Tweeted about Naffe. *See Iqbal*, 556 U.S. at 678. But the district court erred when it dismissed Naffe's state law claims for lack of subject matter jurisdiction because we cannot say to a legal certainty

that Naffe's claims are worth less than $75,000.01. The district court's judgment is therefore

**AFFIRMED in part, REVERSED in part, and REMANDED.**

Each party shall bear its own costs.