**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEVEN SCHNEIDER, individually and on behalf of all others similarly situated,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>FORD MOTOR COMPANY, a Delaware corporation,<br><br>Defendant-Appellant. | No. 18-56347<br><br>D.C. No. 2:18-cv-00367-RGK-AS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted November 14, 2018
Pasadena, California

Before: PAEZ, PARKER,[**] and CLIFTON, Circuit Judges.

Defendant-Appellant Ford Motor Company appeals the district court's order

remanding this putative class action to state court. In that order, the district court

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Barrington D. Parker, United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

held that Ford had not met its burden of showing, by a preponderance of the evidence, that the amount in controversy exceeded CAFA's $5 million threshold. *See* 28 U.S.C. § 1332(d)(2). We reverse.

This case arises out of an alleged defect affecting Ford's F-150 trucks. Plaintiff-Appellee Steven Schneider filed a complaint on behalf of himself and a putative class of California consumers. That class included all persons in California who purchased or leased an F-150 after December 14, 2012. Schneider contended the putative class members were entitled to either damages or a restitution award under several different legal theories.

Ford filed a notice of removal to federal court. In its notice, Ford asserted that, based on Schneider's restitution request, more than $5 million was in controversy. The district court disagreed. It explained that under California's Song-Beverly Act, any restitution award would be equal to the F-150s' purchase price offset by any decrease in the car's value attributable to the buyer's use before the defect was discovered (the "Use Offset"). *See* Cal. Civ. Code § 1793.2(d)(2)(B)-(C); *see also* Cal. Civ. Code § 1794(a)-(b). Ford's notice of removal did not explicitly speak to either element of the Song-Beverly Act's formula: Ford relied on the trucks' Manufacturer's Suggested Retail Price ("MSRP"), not their actual purchase prices, and Ford did not discuss the Use

Offset at all. Because of these deficiencies, the district court concluded that Ford had not demonstrated that the amount in controversy exceeded $5 million.

As an initial matter, the district court should not have applied the preponderance of the evidence standard at that point in the proceeding. The Supreme Court has held that a notice of removal must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014). The preponderance of the evidence standard applies only after "the plaintiff contests, or the court questions, the defendant's allegation" and "both sides submit proof." *Id*. at 554. Here, the district court questioned Ford's estimate, but it did not give Ford the opportunity to introduce additional evidence. Under that posture, it was improper to evaluate the allegations in Ford's notice of removal under the stricter preponderance of the evidence standard.

Nevertheless, it is not necessary to remand the case to permit Ford to submit proof, because Ford satisfied that more stringent standard by attaching a declaration to its notice of removal.[1] That declaration provided evidence that approximately 68,255 new F-150s from model years 2015-2017 were sold in

---

[1] Nor is it necessary to remand the issue to give Schneider an opportunity to present evidence on the subject. Schneider has not contended that he has any evidence to submit.

3

California during the five years between the class date and the date the lawsuit was filed, and that the F-150s' average MSRP was $45,498.94 for those model years.[2] After multiplying those two numbers, Ford concluded that a restitution award in favor of class members could exceed $3.1 billion, or 620 times the $5 million that CAFA requires as a basis for federal jurisdiction.

As the district court recognized, that estimate did not account for either the difference between the F-150s' MSRP and their actual purchase price or the Use Offset.[3] But that does not mean that Ford's evidentiary showing was insufficient. The $5 million jurisdictional minimum is a very small fraction of $3.1 billion, less than one-fifth of one percent, specifically 0.16%. Defendants seeking to show that

---

[2] Schneider argues that this court should defer to the district court's factual finding that the declarant lacked personal knowledge and therefore could not testify to these facts. The district court made no such finding. Moreover, the declarant stated under penalty of perjury that he possessed the requisite personal knowledge, and we have no reason to doubt that affirmation.

[3] Consideration of the Use Offset was appropriate. We have recognized that an estimate of the amount in controversy must be reduced if "a specific rule of law or measure of damages limits the amount of damages recoverable." *See, e.g.*, *Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983); *see also Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015). Thus, an estimate of the amount in controversy must be based on the applicable "measure of damages," not on what a plaintiff requests in a complaint. *See, e.g.*, *Morris*, 704 F.3d at 1115. Here, the measure of restitution is defined as "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *See, e.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). The Use Offset measures the value of the F-150s that the putative class members purchased.

a claim exceeds CAFA's $5 million threshold are entitled to rely on reasonable assumptions. *See Ibarra v. Manheim Investments*, 775 F.3d 1193, 1198 (9th Cir. 2015). It is reasonable to assume that most purchasers did not buy trucks for tens of thousands of dollars less than the MSRP. And it is equally reasonable to assume that the F-150s did not lose nearly all of their value after a few years of use. These inferences compel the conclusion that, although the two issues identified by the district court will reduce the amount in controversy, they will not reduce it by 99.84 percent of the original amount calculated by Ford to be in controversy.[4]

Ford met its burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds CAFA's $5 million threshold. Under CAFA, this case was properly removed to federal court.

Costs to be taxed in favor of Defendant.

**REVERSED; REMANDED for further proceedings.**[5]

---

[4] The district court also did not have the benefit of our recent decision in *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 795 (9th Cir. 2018), in which we held that attorneys' fees that accrue after the filing of a notice of remand can be included in an estimate of the amount in controversy. The possibility that the putative class members could receive an award of attorneys' fees buttresses our conclusion that the amount in controversy exceeds $5 million.

[5] Appellant's motion for miscellaneous relief, Dkt. 21, is denied as moot.