**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THOMAS ANDERSON,
            *Plaintiff-Appellant,*

v.

CHARLES WARNER; COUNTY OF
MENDOCINO; COUNTY OF
MENDOCINO SHERIFF'S DEPARTMENT,
            *Defendants-Appellees.*

No. 04-15505

D.C. No.
CV-01-03471-MHP

OPINION

Appeal from the United States District Court
for the Northern District of California
Marilyn H. Patel, District Judge, Presiding

Argued and Submitted
October 21, 2005—San Francisco, California

Filed June 26, 2006

Before: Sidney R. Thomas and William A. Fletcher,
Circuit Judges, and James C. Mahan,* District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable James C. Mahan, United States District Judge for the
District of Nevada, sitting by designation.

## COUNSEL

William E. Weiss, San Francisco, California, for the appellant.

Duncan M. James, David M. Kindopp, Ukiah, California, for appellee Charles Warner.

Douglas L. Losak, Office of the County Counsel, Ukiah, California, for appellee County of Mendocino.

## OPINION

W. FLETCHER, Circuit Judge:

In this § 1983 suit, Thomas Anderson appeals from the district court's grant of summary judgment to individual defendant Charles Warner, as well as defendants Mendocino County Sheriff's Office and County of Mendocino (collectively "the County"). Anderson contends that Warner assaulted him while acting under color of state law. Anderson also contends that the County negligently hired and supervised Warner, and conducted an inadequate investigation into the assault by Warner. We reverse as to Warner and affirm as to the County.

## I.   Background

On the morning of July 30, 2001, Anderson and Warner were slowly driving their own vehicles toward the Redwood Valley Parade. Anderson was momentarily distracted and accidentally rear-ended Warner's vintage pickup truck. Warner got out of his truck, went back to Anderson's vehicle, opened Anderson's door, and began hitting Anderson in the face and neck. Warner's wife, who had been a passenger, also got out of the truck. A probation officer and friend of Warner, Thomas Cropp, was driving the vehicle in front of Warner. Cropp got out of his vehicle and came back to join Warner and his wife. At the time of the assault, Warner was employed by the Mendocino County Sheriff's Department as the jail commander. On the day of the assault, Warner was off duty and out of uniform.

Recounting the assault in his declaration, Anderson stated:

> I heard someone yell t[o] call the police and then a woman I later learned was Mr. Warner's wife yelled, "he is a cop". I then said to Mr. Warner, "You're a cop?" and something to the effect that this was another Rodney King. He replied that he was and I heard him tell witnesses he was a cop and to stay back. I also heard a person who I now know is named Thomas Cropp tell people he was a probation officer and that this was police business. He told people to move on. Mr. Warner did not contradict him.

In his deposition, Anderson recounted that he had briefly been rendered unconscious by the assault. He then described what he saw after he regained consciousness:

> Well, what happened after I came to, I sat up and noticed Mr. Warner and this other guy and this lady holding their hands up, telling the crowd to disperse — that it's a police matter, and that Warner was an officer[.]

"This other guy," described by Anderson as having gray hair and a "small gray beard," was Thomas Cropp. "This lady" was Warner's wife. The deposition continued:

> Q: Tell me what you heard the man with gray hair and a beard say?
>
> A [by Anderson]: I heard him say that for the crowd to disperse.
>
> Q: Did he use the word "disperse"?
>
> A: Yes.

Q: What were his actual words if you can remember?

A: He was just telling the crowd to back up, to disperse, this is police business.

. . .

Q: Now did you also hear some other person make some comment . . . ?

A: Yes.

Q: Who was that?

A: This big woman on the right-hand side of Mr. Warner, on the right-hand side of the crowd. And she was saying that he was a cop.

Q: What do you recall her actual words to be?

A: "He's a cop. Let him alone. Look what he did to his truck."

Later in the deposition, Anderson stated that fire department personnel came to the scene:

Mr. Warner looked and seen that the fire department was running down the road. He went — he slid back behind my seat and held my head, and he was telling me . . . that he was a police officer, not to say anything, that he'll fix it. He'll work it out.

Tony Maples was a witness to the assault. He provided a sworn declaration to which he attached a transcript of a taped interview with the police after the event. Maples stated in the interview:

> I yelled "Somebody call the cops[.]" And [the lady in the red shirt] goes, "He is a cop". And I went, "Oh my gosh" . . . and then . . . I started yelling, "Then what is he doing this for?" . . . And the lady goes, "Well look at his — look what that guy did to my — did to his truck. Let him be — let him hit him."

Ginerva Chandler, another witness, provided a sworn declaration to which she attached a transcript of her taped interview with the police. She stated that she had passed the scene of the accident on her bicycle:

> And we could hear them yelling and we assumed the guy in [Anderson's car] was hurt and they were going to try and get him out of the car. . . . And then what I heard was a woman yelling, you'll have to excuse the language, "Fucking caused the accident," and then yelling, "He's a cop. He's a cop," and we saw them reaching in the car to get the gentleman in the car out and we just kept rolling.

Anderson filed a complaint in federal district court alleging violations of 42 U.S.C. § 1983 as well as various state law claims. Defendants Warner and the County moved for summary judgment. The district court granted Warner's motion on the ground that he had not acted under color of state law. It granted the County's motion on the ground that Anderson had not presented any evidence of a causal connection between his injuries and either the asserted deficient training and supervision or the asserted failure to investigate. The district court dismissed the state-law claims without prejudice under 28 U.S.C. § 1367(c)(3).

Anderson timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.   Standard of Review

We review the district court's grant of summary judgment de novo. *See Buono v. Norton*, 371 F.3d 543, 545 (9th Cir.

2004). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## III. Discussion

**[1]** Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injury in an action at law[.]

Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004) (internal quotation marks omitted). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).

We discuss the claims against Warner and the County in turn.

## A. Warner

**[2]** Anderson claims that Warner violated § 1983 when he invoked his law enforcement status in order to keep others from interfering with the assault. To state a claim under

§ 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Our focus is on the second requirement.

At the time of the assault, Warner was an employee of the Mendocino County Sheriff's Department. He was the county jail commander with the rank of lieutenant. Earlier in his career, as a lower-ranking officer, Warner had frequently worn a uniform while on duty. In his position as jail commander, he rarely wore a uniform even while on duty. Warner was entitled, by virtue of his position, to carry a gun while performing his duties in the jail and while transporting prisoners outside the jail. He was not entitled to carry a gun while off duty.

**[3]** As a county jail commander, Warner's status under California law was that of a "custodial officer." Under California Penal Code § 831.5(a), "a custodial officer is a public officer, not a peace officer, employed by a law enforcement agency [of a county] . . . who has the authority and responsibility for maintaining custody of prisoners . . . ." Section 831.5(f) provides that custodial officers may make warrantless arrests only while on duty: "A custodial officer may use reasonable force in establishing and maintaining custody of persons delivered to him or her by a law enforcement officer; may make arrests for misdemeanors and felonies within the local detention facility pursuant to a duly issued warrant; [and] may make warrantless arrests pursuant to Section 836.5 only during the duration of his or her job . . . ."

Warner did not have the status of "peace officer" under California law. "Peace officers," as defined in California Penal Code § 830.1, have considerably broader powers than "custodial officers." For example, under § 836.5(a), peace officers may make warrantless arrests "whenever the officer or employee has reasonable cause to believe that the person

to be arrested has committed a misdemeanor in the presence of the officer or employee that is a violation of a statute or ordinance that the officer or employee has the duty to enforce."

[4] A police report in the record summarizes an interview between Warner and an investigating police officer. Warner is reported to have said that he acted because he thought Anderson was trying to "flee the scene of the accident," and that he "punched" Anderson "about two times." Warner argues that, as a custodial officer, he had no authority to try and prevent Anderson from leaving the scene of the accident or to issue commands to the crowd that had gathered at the scene. The district court noted that, as a custodial officer, Warner had no authority to make a warrantless arrest of Anderson. The district court concluded, "[e]ven assuming Warner identified himself as a police officer and issued commands to the crowd, his conduct is not related to the performance of his duties as a custodial officer. Warner was not in fact performing any of his official duties, nor did the alleged conduct arise from the performance of such duties."

Warner relies on the reasoning of the district court to argue that he was not acting under color of state law. He argues that because he was a "custodial officer" rather than a "peace officer," he could not have been acting under color of state law within the meaning of § 1983 when he assaulted Anderson. He contends that he could not have been abusing his authority, and hence acting under of color of state law, because the scope of his authority did not extend to the acts he committed. We disagree with Warner's contention that he was not acting under color of state law.

[5] There is no "rigid formula" for determining whether a state or local law official is acting under color of state law. *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974). "State employment is generally sufficient to render the defendant a state actor," *Atkins*, 487 U.S. at 48 (internal quo-

tations and alterations omitted), but "whether a[n] . . . officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995). "Misuse of power, possessed by virtue of state law and possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under the color' of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *Atkins*, 487 U.S. at 49-50.

**[6]** We hold that Warner was acting under color of state law when he invoked his law enforcement status to keep bystanders from interfering with his assault on Anderson. In the circumstances of this case, there are three critical requirements that must be satisfied. First, the defendant's action must have been "performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties." *McDade*, 223 F.3d at 1140. Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839-40 (9th Cir. 1996) (finding no color of state law because the victim had not opened the door based on defendant's status as a police officer). Third, the challenged conduct must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Martinez*, 54 F.3d at 987.

**[7]** We consider the first two requirements together: (1) the defendant must have pretended to act in the performance of his official duties, (2) with the purpose and effect of influencing the behavior of others. Viewing the evidence in Anderson's favor, it is clear both that Warner pretended to act in performance of his official duties, and that his actions had the purpose and effect of discouraging bystanders from interfer-

ing. Anderson stated in his declaration that "I heard [Warner] tell witnesses he was a cop and to stay back." In his deposition, he stated that after he regained consciousness, he "noticed Mr. Warner and this other guy and this lady holding their hands up, telling the crowd to disperse — that it's a police matter, and that Warner was an officer." Further, it is reasonably clear from the statements of witnesses Maples and Chandler that Warner's statements had the effect of influencing the behavior of others. For example, when Chandler heard that Warner was a "cop," she did not get off her bicycle, but rather "just kept rolling."

**[8]** The third requirement is that Warner's conduct must be sufficiently related "either to the officer's governmental status or to the performance of his official duties." *Martinez*, 54 F.3d at 987. This requirement cannot mean that an officer must have been acting within the scope of his authority in order for him to have been acting under color of state law. If that were true, no § 1983 suit could ever succeed, for the premise of a successful suit is that the officer acted illegally — that is, outside the scope of his authority. Instead, the requirement must mean only that the challenged conduct must have a sufficiently close relationship to the officer's "governmental status" or to "the performance of his duties."

**[9]** In the context of this case, this third requirement means that Warner must have used "the badge of [his] authority" to deprive an individual of his rights, *McDade*, 223 F.3d at 1139, by invoking his "governmental status" to influence the behavior of those around him. A key aspect of this requirement is that the officer must have invoked his actual status. For example, a law enforcement officer employed by the Sheriff's Office who says, "I am a cop, stand back" is invoking his governmental status. By contrast, a janitor employed by the Sheriff's Office who says the same thing is *not* invoking his governmental status — for the simple reason that he is not, in fact, a "cop."

**[10]** We hold that Warner invoked his "governmental status" within the meaning of this requirement. According to Anderson, Warner said that he was a "cop" and told the bystanders to stay back. "Cop" is a generic, non-technical term. It can, of course, refer to a "peace officer" under California law. But it can also encompass and refer to Warner's status as a "custodial officer." If Warner had been a janitor in the county jail, his statement that he was a "cop" would not have been enough to render his conduct under color of law, for the term "cop" would have been a clearly inaccurate characterization of his status. But Warner was, instead, a lieutenant in the Mendocino County Sheriff's Department and the commander of the county jail. "Cop" is a sufficiently capacious term to include that status.

**[11]** We therefore conclude that when Warner told the bystanders that he was a "cop" and ordered them to stay back, he was acting under color of state law. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Classic*, 313 U.S. at 326.

## B.    The County

Local government entities are considered "persons" for purposes of § 1983 and can be sued directly for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 690 (1978). However, a municipality "cannot be held liable under § 1983 on a *respondeat superior* theory," that is, "*solely* because it employs a tortfeasor." *Id.* at 691 (emphasis in original).

**[12]** In order to hold the County liable under § 1983, Anderson must show "(1) that he possessed a constitutional

right of which he was deprived; (2) that the [County] had a policy; (3) that the policy 'amounts to deliberate indifference' to [Anderson's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.' " *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). There also must be a "direct causal link" between the policy or custom and the injury, and Anderson must be able to demonstrate that the injury resulted from a "permanent and well settled practice." *McDade*, 223 F.3d at 1141 (internal quotations omitted). A failure to train or supervise can amount to a "policy or custom" sufficient to impose liability on the County. *City of Canton*, 489 U.S. at 389-90.

[13] The district court concluded that even if Warner had been acting under color of state law, Anderson had provided insufficient evidence to connect Warner's actions to any possible inadequate training or supervision. Anderson contends that the County was aware that Warner had a reputation for being prone to violence and aggressive behavior and that it negligently hired Warner for a position where there was a substantial risk that Warner would violate the rights of others. In addition, Anderson contends that the County failed to train Warner adequately in the proper use of his authority and was negligent in its supervision of him. However, Anderson has not shown that the County's asserted deficiencies in hiring, training and supervision, if any, amount to a policy reflecting "deliberate indifference to the rights of persons with whom the police come into contact." *See City of Canton*, 489 U.S. at 388.

[14] We therefore affirm the district court's grant of summary judgment to the County.

## IV. Conclusion

For the foregoing reasons, we reverse the district court's grant of summary judgment with respect to Warner and affirm

the grant of summary judgment with respect to the County. We remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED** in part; **REMANDED** in part. Costs to Anderson with respect to the appeal against Warner. Costs to the County defendants with respect to the appeal against them.