NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 1 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

REBECCA J. LEEPER, an individual,

Plaintiff-Appellant,

v.

CITY OF TACOMA, a municipal
corporation; TEL C. THOMPSON,

Defendants-Appellees.

No.    22-35502

D.C. No.
3:20-cv-05467-BHS-DWC

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted August 17, 2023
Anchorage, Alaska

Before:  MURGUIA, Chief Judge, and PAEZ and NGUYEN, Circuit Judges.

Rebecca Leeper sued the City of Tacoma and former Tacoma Police

Department ("TPD") officer Tel Thompson after Thompson sexually assaulted

Leeper while they both worked a shift at a Fred Meyer supermarket.  Leeper brought

claims under 42 U.S.C. § 1983 and Washington state law.  Leeper appeals the district

court's summary judgment order in favor of the City of Tacoma and its denial of

_____

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Leeper's partial motion for summary judgment on two of the City of Tacoma's affirmative defenses. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, and reverse and remand in part.

1. "To state a claim under [§ 1983], [Leeper] must allege that she suffered the deprivation of a federally protected right and that 'the alleged deprivation was committed by a person acting under color of state law.'" *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). We employ a three-part test to determine "when a police officer, although not on duty, has acted under color of state law." *Id.*[1] The officer must have: (1) "acted or pretended to act in the performance of his official duties;" (2) "invoked his status as a law enforcement officer with the purpose and effect of influencing the behavior of others;" and (3) "engaged in conduct that 'related in some meaningful way either to the officer's governmental status or to the performance of his duties.'" *Id.* (quoting *Anderson v. Warner*, 451 F.3d 1063, 1068–69 (9th Cir. 2006)).

Viewing the evidence in the light most favorable to Leeper, she has introduced sufficient evidence to meet this three-part test. First, Thompson was "acting, purporting, or pretending to act in the performance of his . . . official duties" when he assaulted Leeper. *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).

---

[1] Both parties agree that this three-part test applies in this case.

2

Thompson was working an "off-duty" security shift at Fred Meyer during the incident pursuant to a TPD policy that allowed its officers to work these shifts while wearing their TPD uniforms and utilizing their police powers. Thompson was identifiable as an officer because he was wearing his uniform, badge, and was essentially on lease to Fred Meyer with TPD's permission. And he only had access to the back security office where he groped Leeper because of his role as an off-duty officer. *See id*. at 1140–41 (concluding state officer acted under color of state law because she "purported or pretended to be a state officer during the hours in which she accessed the computer" to access confidential information of the plaintiff).

Second, Thompson "invoked his status as a law enforcement officer with the purpose and effect of influencing the behavior of others." *Park*, 952 F.3d at 1140. Thompson was wearing his uniform when he assaulted Leeper in front of other Fred Meyer employees, thereby implicitly using his status as a law enforcement officer to prevent the other employees from intervening. *See Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991) (holding that a state employee acted under color of state law in part because the "defendant used his government position to exert influence and physical control over these plaintiffs in order to sexually assault them").

Third, and finally, Thompson "engaged in conduct that related in some meaningful way either to [his] governmental status or to the performance of his

duties." *Hyun Ju Park*, 952 F.3d at 1140 (cleaned up). Thompson's official duties at Fred Meyer were broad. Fred Meyer hoped Thompson would deter criminal activity around him simply through his visible presence as a uniformed police officer, and Thompson was doing that when he groped Leeper. *See e.g., Vang*, 944 F.2d at 480 (holding that a rape was sufficiently related to state employee's duties because he raped the plaintiffs during meetings "related to the provision of services pursuant to his state employment"). We therefore reverse the district court's grant of summary judgment on this claim.

2. To bring a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of Tacoma for failure to supervise, Leeper must show: "(1) that [she] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (citation and internal quotation marks omitted). Leeper fails to show that the City of Tacoma had a policy or custom of ignoring complaints about Thompson. Leeper only presents evidence of complaints made against Thompson, and the record reflects that TPD *did* investigate the official complaints made against him. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (explaining that the alleged "custom may not be predicated on isolated or sporadic incidents . . . [but on]

4

practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"). The district court therefore did not err in granting summary judgment on this claim.

3. "Vicarious liability, otherwise known as the doctrine of respondeat superior, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Grp. Home*, 929 P.2d 420, 425–26 (Wash. 1997). The key inquiry is whether the employee was acting within the scope of employment when committing the tort. *Evans v. Tacoma Sch. Dist. No. 10*, 380 P.3d 553, 559 (Wash. Ct. App. 2016). As Leeper concedes, Washington courts routinely hold that employers are not liable when their employees engage in intentional sexual misconduct. *See, e.g.*, *Thompson v. Everett Clinic*, 860 P.2d 1054, 1058 (Wash. Ct. App. 1993) (holding that a doctor's tortious sexual assault was not attributable to the doctor's clinic because "[t]he assault emanated from [the doctor's] wholly personal motives for sexual gratification"). The district court therefore did not err in granting summary judgment on this claim.

4. An employer is liable for negligent retention or supervision "if (1) the employer knew, or in the exercise of ordinary care, should have known of the employee's unfitness before the occurrence; and (2) retaining [or failing to supervise] the employee was a proximate cause of the plaintiff's injuries." *Betty Y. v. Al-Hellou*, 988 P.2d 1031, 1033 (Wash. Ct. App. 1999). Looking at the evidence

5

in the light most favorable to Leeper, a reasonable jury could find that TPD knew, or at least should have known, that Thompson was "unfit" before he groped Leeper. Indeed, TPD had received multiple complaints about Thompson's past inappropriate sexual behavior.

A reasonable jury could find that TPD's failure to supervise Thompson and its retention of Thompson despite that knowledge proximately caused Leeper's injuries. *See e.g., Rucshner v. ADT, Sec. Sys., Inc*., 204 P.3d 271, 272−73 (Wash. Ct. App. 2009) (holding in part that failure to conduct a criminal background check raised a genuine issue of material fact as to whether an employer was negligent for hiring a salesman that later raped a fourteen-year-old girl he met while making a sales call at her home). We therefore reverse the district court's grant of summary judgment on this claim.

5. Leeper appears to base her negligent infliction of emotional distress claim on the City of Tacoma's negligent supervision of Thompson. The district court concluded that this claim failed because Leeper's negligent supervision claim failed. Because we reverse the district court's grant of summary judgment on the negligent supervision claim, we reverse the grant of summary judgment on this claim and remand for the district court to consider this claim on the merits.

6. Finally, the district court denied Leeper's motion for partial summary judgment against the City of Tacoma's affirmative defenses as moot because it

granted summary judgment in favor of the City of Tacoma on all claims. Because we reverse in part the district court's grant of summary judgment, we reverse the district court's denial of Leeper's partial motion for summary judgment to the extent it is no longer moot and remand for the district court to consider the motion against the City of Tacoma in the first instance.

Each party is to bear its own costs on appeal. *See* Fed. R. App. 39(a)(4).

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART**.